IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JAMILET GONZÁLEZ ARROYO in representation of her minor son ALG<br><br>**Plaintiffs**<br><br>v.<br><br>DOCTOR'S CENTER HOSPITAL BAYAMÓN, INC., et al<br><br>**Defendants** | CIVIL NO. 17-1136(RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is codefendant Doctors' Center Hospital Bayamón, Inc.'s (subsequently "Doctors' Hospital") *Motion in Limine to Preclude the Opinions & Testimony of Plaintiffs' Expert Dr. Barry Schifrin* ("*Motion in Limine*"). (Docket No. 44). Codefendants Dr. Benito Hernández, Jane Doe, and the conjugal partnership Hernández-Doe subsequently joined the *Motion in Limine*. (Docket Nos. 45 and 46). In response, Plaintiff filed an *Opposition to Defendant's Motion in Limine at Docket No. 44* and Doctors' Hospital then filed a *Reply to Plaintiffs' Opposition to Doctors' Motion in Limine to Preclude the Opinions & Testimony of Dr. Barry Schifrin* ("*Reply*"). (Docket Nos. 50 and 55, respectively). Having reviewed the parties' arguments and the applicable law, the Court hereby **GRANTS** Doctors' Hospital *Motion*

*in Limine* at Docket No. 44. Therefore, Dr. Barry Schifrin's proffered expert testimony is stricken.

## I. BACKGROUND

On January 30, 2017, Plaintiff Jamilet González-Arroyo ("Plaintiff" or "Mrs. González"), in representation of her minor son ALG, sued Doctors' Hospital, Dr. Benito Hernández-Díaz ("Dr. Hernández"), and other unnamed defendants for alleged medical malpractice. (Docket No. 1). In the *Complaint*, Plaintiff claims that ALG's cerebral palsy, among other conditions and permanent injuries, could have been prevented by the "[p]rompt and responsible attention by defendants in the form of preventative or resuscitative maneuvers or earlier cesarean section" to prevent ALG's loss of oxygen at birth. Id. ¶¶ 41-43; 46-48. Doctors' Hospital and Dr. Hernández filed individual answers to the *Complaint* contending that they acted "within the recognized standard of care." (Docket Nos. 9 ¶ 27; 12 ¶ 18).

Plaintiff retained Dr. Barry Schifrin ("Dr. Schifrin") as an expert witness and proffered that he would testify:

> [A]s an expert in obstetrics and gynecology regarding his qualifications and experience, his review of the pertinent records, the standards of care applicable to this case, the defendants' departures from such standards, the causal relationship of these departures with the damages of baby ALG, the contents of his expert report, the applicable medical literature and the testimony given at his deposition.

(Docket No. 22 at 47).

On February 18, 2020, Doctors' Hospital filed a *Motion in Limine* requesting that the Court strike the proffered testimony of Dr. Schifrin, for his limited expertise and failing to comply with Fed. R. Civ. P. 26 and Fed. R. Evid. 702. (Docket No. 44). Doctors' Hospital contends that Dr. Schifrin's expert report: (1) contains opinions that are merely assumptions based on insufficient information; (2) does not establish a national standard of care; (3) lacks references to any medical literature; and (4) is unreliable. Id. 9-14; 19-20. Furthermore, Doctors' Hospital also contends that Plaintiff failed to comply with their duty to supplement the report pursuant to Fed. R. Civ. P. 26(e) after Dr. Schifrin's deposition in which he retracted several of his opinions. Id. at 15. Codefendant Dr. Hernández filed a *Motion for Joinder* requesting to join Doctors' Hospital's *Motion in Limine* and which was subsequently granted by the Court. (Docket Nos. 45 and 46).

In the *Opposition to Defendant's Motion in Limine* ("*Opposition*"), Plaintiff posits that Defendant could have requested additional information or an amended expert report instead of "complain[ing] inappropriately in an *in limine* that the expert report had not been supplemented." (Docket No. 50 at 10). Additionally, Plaintiff argues that violating the duty to supplement is a mere technicality that would cause no harm and

therefore does not warrant the exclusion of Dr. Schifrin's testimony. Id. at 11. Notably, Plaintiff's *Opposition* did not address Doctors' Hospital's allegations regarding the report's lack of medical literature, alleged shortcomings establishing a standard of care, nor the contention that it does not comply with Fed. R. Evid. 702.

In its *Reply* to Plaintiff's *Opposition*, Doctors' Hospital avers that Plaintiff's duty to supplement its expert report is fundamental, especially because of the discrepancies between Dr. Schifrin's proffered report and subsequent deposition testimony. (Docket No. 55 at 6-7). As an example, Doctors' Hospital points to the fact that despite having assumed in his report that fetal tracings simply did not exist, Dr. Schifrin was able to review said tracings during his deposition and still did not supplement his report with new findings. Id. at 7-8. Lastly, Doctors' Hospital maintains that the proffered expert testimony simply does not support Plaintiff's claim that a negligent cesarean section caused ALG's damages. Id. at 9.

## II. LEGAL STANDARD

### A. The Admissibility of Expert Witness Testimony

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. Specifically, Fed. R. Evid. 702 ("Rule 702") establishes that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to this rule, trial judges are tasked with "ensuring that an expert's testimony both rests on reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). Therefore, when applying Rule 702, judges assume the "role of gatekeepers to screen expert testimony that although relevant, was based on unreliable scientific methodologies." González-Pérez v. Gómez- Águila, 296 F.Supp.2d 110, 113 (D.P.R. 2003) (citing Daubert, 509 U.S. at 597 (1993)) ("Pertinent evidence based on scientifically valid principles will satisfy those demands"). When performing their gatekeeping function, judges must focus "solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595.

However, conclusions and methodology are not *entirely* distinct from one another. There are instances where "**a court may conclude that there is simply too great an analytical gap between**

**the data and the opinion proffered**." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (emphasis added). In practical terms, under Daubert, **an expert cannot merely state their qualifications, conclusions and assurances of reliability**. *See* Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995). "Moreover, if a witness is relying mainly on experience, he must provide more information for the Court to determine the reliability of his testimony." Santa Cruz-Bacardi v. Metro Pavia Hosp., Inc., 2019 WL 3403367, at *2 (D.P.R. 2019).

Thus, to ensure reliability and intellectual rigor, experts "must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." Figueroa v. Simplicity Plan de Puerto Rico, 267 F. Supp. 2d 161, 164 (D.P.R. 2003). "Failure to provide a testimony or a report detailing the basis for the expert's opinion in a **comprehensive scientific manner can cause the expert witness and his report to be eliminated** from trial." Id. (citing Justo Arenas & Carol M. Romey, Professional Judgment Standard and Losing Games for Psychology, Experts and the Courts, 68 Rev. Jur. U.P.R. 159, 180 (1999)) (emphasis added).

### B. Expert Report Requirements

In addition to satisfying the rigors imposed by Rule 702, to be admissible, expert reports must also comply with Federal Rule

of Civil Procedure 26(a)(2)(B). Specifically, Fed. R. Civ. P. 26(a)(2)(B) requires that expert reports contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

These requirements make it clear that Rule 26(a)(2)(B) "call[s] for parties to make explicit and detailed expert disclosures." Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D., 456 F.3d 272, 276 (1st Cir. 2006). Therefore, "expert-related disclosures are insufficient when they consist of 'sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony.'" Rivera-Marrero v. Presbyterian Cmty. Hosp., 255 F. Supp. 3d 290, 296–97 (D.P.R. 2017) (quoting Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546 (5th Cir. 1996)). *See also* Romero v. Drummond Co., Inc., 552 F.3d 1303 (11th Cir. 2008) (finding that the District Court did not abuse its discretion when excluding experts whose reports consisted of single paragraphs that merely recited

the general subject matter of their expected testimony and lacked any of the substance required by Rule 26(a)(2)(B)).

In accordance with these requirements, Fed. R. Civ. P. 26(e)(2) dictates that **parties have a duty to supplement an expert's report by the time pretrial disclosures are due**. The duty also applies to "[**c]hanges in the opinions expressed by the expert whether in the report or at a subsequent deposition**." Fed. R. Civ. P. 26(a) advisory committee's notes (emphasis added).

When a party fails to provide the information required by Rule 26(a) or (e), Fed. R. Civ. P. 37(c)(1) authorizes the trial court to impose sanctions, such as the preclusion of expert testimony or even the dismissal of the action unless the failure was substantially justified or harmless. *See* Lawes v. CSA Architects & Engineers LLP, 963 F.3d 72, 91 (1st Cir. 2020); Aponte-Davila v. Municipality of Caguas, 2017 WL 3025896, at *1 (D.P.R. 2017). The First Circuit has instructed that "[p]reclusion is not strictly required." Lawes, 963 F.3d at 91 (1st Cir. 2020). Instead, courts "should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). *See also* Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008) ("When fashioning a remedy, the district court should consider, inter alia, the reason for noncompliance, the surprise and prejudice to

the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony.").

### C. Which Physicians are Qualified to Testify as Experts

When analyzing the admissibility of an expert witness, the trial court must first resolve "whether the putative expert is qualified by knowledge, skill, experience, training, or education," to offer testimony. Mitchell v. United States, 141 F.3d 8, 14 (1st Cir. 1998) (citation omitted). The First Circuit has reiterated that an expert physician does not need to be "**a specialist in a particular medical discipline to render expert testimony relating to that discipline**." Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion, 345 F.3d 15, 24 (1st Cir. 2003). "The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it." Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985). Although credentials such as board certification in a medical specialty are relevant when considering the weight and probative value of expert witness testimony, they are not necessary for its admissibility. *See* Pages-Ramirez v. Ramirez- Gonzalez, 605 F.3d 109, 114 (1st Cir. 2010).

Furthermore, excluding testimony "that would otherwise 'assist the trier better to understand a fact in issue' simply

because the expert does not have the specialization that the court considers most appropriate" is considered to be an abuse of the court's discretion. PId. at 114. *See also* Gaydar, 345 F.3d at 24-25 ("[I]t would have been an abuse of discretion for the court to exclude Dr. Rodriguez's testimony on the sole basis that his medical specialty was something other than gynecology or obstetrics.")

**D. Expert testimony in medical malpractice cases**

In medical malpractice cases, plaintiffs must submit an expert report including "all of the opinions that the expert will express at trial and the reasons for them." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009); *see also* Gonzalez Rivera v. Hospital HIMA-Caguas, 2018 WL 4676925, at *3 (D.P.R. 2018). Thus, an expert's report must be detailed, complete and "include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor." Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 741 n. 6 (D.P.R. 1998) (internal citations omitted).

Under Puerto Rico law, plaintiffs in medical malpractice suits must establish three main elements: "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Laureano Quinones v. Nadal Carrion, 2018

WL 4057264, at *2- 3 (D.P.R. 2018) (quoting Marcano Rivera v. Turabo Medical Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005)).

In these cases, physicians must comply with the national standard of care. *See* Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 190 (1st Cir. 1997). In other words, a physician's duty is to provide patients with medical care "that, in the light of the modern means of communication and education, meets the requirements generally recognized by the medical profession." Ramirez-Ortiz v. Corporacion Del Centro Cardiovascular de Puerto Rico y Del Caribe, 32 F. Supp. 3d 83, 87 (D.P.R. 2014) (quoting Santiago-Otero v. Mendez, 135 D.P.R. 540, 1994 P.R.-Eng. 909, 224 (1994)). Notably, "experts must prove that a standard of care is nationally used, rather than simply explaining a standard as based on their experience." Santa Cruz-Bacardi, 2019 WL 3403367, at *5. This can be achieved by referencing "a published standard, [discussion] of the described course of treatment with practitioners outside the District ... at seminars or conventions, or through presentation of relevant data." Strickland v. Pinder, 899 A.2d 770, 773-74 (D.C. 2006) (internal citations omitted).

Moreover, health-care providers are "presumed to have exercised reasonable care in the discharge of [their] functions." Lopez-Rivera v. Hosp. Auxilio Mutuo, Inc., 290 F. Supp. 3d 137, 142 (D.P.R. 2017) (internal quotations omitted). Therefore,

plaintiffs bear the burden of refuting said presumption. To do so, expert testimony must typically be used. Given that "medical knowledge and training are critical to demonstrating the parameters of a physician's duty, the minimum standard of acceptable care [...] must ordinarily be established by expert testimony." Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 78 (1st Cir. 1993). Only in medical malpractice suits "where the lack of care has been found to be so evident as to infer negligence" is other evidence "aside from expert testimony" sufficient to establish negligence. Laureano Quinones, 2018 WL 4057264, at *3 (internal quotations omitted).

### III. ANALYSIS

Prior to analyzing the content of Dr. Schifrin's report, the Court must determine whether he is qualified to testify as an expert in the present case. Although Doctors' Hospital establishes that Dr. Schifrin is an obstetrician gynecologist and lacks formal training in pediatric neonatology (Docket No. 44 at 3), it has failed to establish that Dr. Schifrin is not a qualified expert witness. *See* Gaydar, 345 F.3d at 24 (holding that an expert physician does not need to be "a specialist in a particular medical discipline to render expert testimony relating to that discipline."). However, in his deposition Dr. Schifrin explicitly states that although he is capable of identifying problems in the delivery of ALG, such as if there was potential oxygen loss due to

a drop in the maternal blood pressure, it is "for someone else to state" if it caused ALG's injuries. (Docket No. 44-1 P. 64, L. 3-9).

Despite the above, after reviewing Dr. Schifrin's proffered report, it is evident that the same is improperly founded and therefore inadmissible. Only two and half pages of the report are dedicated to Dr. Schifrin's opinions. (Docket No. 44-2 at 6—8). In this section, Dr. Schifrin repeatedly states that he lacks information such as the fetal monitoring strip; annotations regarding Mrs. González's contractions (*i.e* their frequency, intensity, or duration); or any neuroradiological examinations, including an MRI. Id. at 6-7. Consequently, in the following instances, Dr. Schifrin indicates that he must make assumptions in the absence of said data:

> **Assuming** that the tracing is obtained, but that it was not properly interpreted, then I **infer** that the tracing is initially reassuring and there is no evidence of fetal hypoxia – it is a tracing that would permit time to discuss and prepare for an elective cesarean section or an attempt to undertake a trial of labor in the expectation of a safe vaginal delivery.
>
> […]
>
> In this respect, **given the limited information**, I am taking advantage of the statement in the medical records which acknowledges a period of hypoxia as a cause of the patient's CP.
>
> […]

> With regard to the contractions, **again in the absence of annotations** about their frequency, intensity or duration, **I have assumed** that the patient is having significant, painful contractions on admission to the labor and delivery unit.
>
> […]
>
> To the extent that the fetus was infected, that would have been apparent on the fetal monitor tracing as fetal tachycardia – **but this is not affirmed in the annotations** that are provided.

Id. at 6-8.

Even though he had not examined the fetal monitoring strips at the time he rendered his expert report, Dr. Schifrin concluded "that there was a failure in the standard of care by the nurses and the physician to properly understand the evolution of changes in the fetal heart rate pattern." Id. at 8. This conclusion is not based on sufficient facts or data nor the product of reliable principles as required by Fed. R. Evid. 702.

Not only does the proffered expert testimony lack key medical data, it fails cite any medical literature whatsoever. "To comply with Fed. R. Civ. P. 26(a)(2)(B), the report necessarily needed to include this information, not simply provide copies of medical literature." Martinez v. United States, 2019 WL 3402950, at *2 (D.P.R. 2019). See also Baker v. Chevron USA, Inc., 680 F. Supp. 2d 865, 878 (S.D. Ohio 2010), aff'd sub nom. Baker v. Chevron U.S.A. Inc., 533 F. App'x 509 (6th Cir. 2013) (striking an expert

report in part because the expert "made no effort to connect the medical literature to his opinions.").

Furthermore, while Dr. Schifrin does indicate *a* standard of care, the report does not specify if it is the *national* standard, as required by the applicable case law, or solely his personal opinion on the matter. *See* Strickland, 899 A.2d at 773-74; Porter v. McHugh, 850 F. Supp. 2d 264, 268 (D.D.C. 2012) ("Where the expert makes 'no attempt to link his testimony to any certification process, current literature, conference or discussion with other knowledgeable professionals,' there is no 'basis for his discussion of the national standard of care.'"). Moreover, the report does not provide any data to sustain or explain the conclusory finding that there was a deviation from the standard of care.

Considering the above, "there is simply too great an analytical gap" between the content of the report and the opinion proffered. Gen. Elec. Co., 522 U.S. at 146. Thus, Dr. Schifrin's expert report would **not** assist the trier of fact with regards to identifying, let alone understanding, the applicable standard of care and any deviation from it by the Defendants.

Lastly, contrary to Plaintiff's contention, Defendants had no duty to request that Dr. Schifrin issue a supplemental report. (Docket No. 44 at 15). Fed. R. Civ. P. 26(e) imposes a duty to supplement an expert report with the information given during the

expert's deposition upon the party proposing the expert, that is, Plaintiff in this case. The Court recognizes that a supplemental report would have afforded Plaintiff the opportunity to correct deficiencies in Dr. Schifrin's report. But, perhaps the reason that no supplemental report was issued is that the results of Dr. Schifrin's deposition were inauspicious. For example, at his deposition, after reviewing the fetal monitoring strips which covered up to 90 minutes before the delivery, Dr. Schifrin testified the infant's heart rate had a normal baseline and was within a normal range although there were prolonged decelerations. (Docket No. 44-1 at 72-76). He likewise admitted that, "while it did not preclude an injury", the baby was <u>not</u> asphyxiated or depressed at the time of birth. <u>Id.</u> at 88.

### IV. CONCLUSION

For the reasons set forth herein, the Court finds that Dr. Schifrin's report and proffered testimony do not fulfill the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702 and the applicable case law. Wherefore, Defendant's *Motion in Limine* at Docket No. 44 is hereby **GRANTED.**

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 5th day of August 2020.

S/ RAÚL M. ARIAS-MARXUACH<br>
United States District Judge