**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

JAMILET GONZÁLEZ-ARROYO,

    **Plaintiff**

        v.

DOCTORS' CENTER HOSPITAL
BAYAMON, INC., et al.

    **Defendants**

**CIVIL NO.** 17-1136(RAM)

### OPINION AND ORDER[1]

RAÚL M. ARIAS-MARXUACH, District Judge

    Pending before the Court is defendant Doctors' Center Hospital Bayamón *Motion for Summary Judgment & Legal Memorandum in Support of the Same* ("*Motion for Summary Judgment*" or "*MSJ*") and *Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* ("SUMF") requesting the dismissal of the present case. (Docket Nos. 62 and 62-1). Having reviewed the parties' submissions in support and in opposition to the motion (Docket Nos. 67 and 71), the Court **GRANTS** the *Motion for Summary Judgment* at Docket No. 62. Judgment dismissing the case **with prejudice** shall be entered accordingly.

---

[1] Natasha Ramos-Ayala, a rising third-year student at the University of Puerto Rico School of Law, assisted in the preparation of this Opinion and Order.

## I. BACKGROUND

On January 30, 2017, Jamilet González-Arroyo ("Mrs. González" or "Plaintiff"), in representation of her minor son ALG, filed a lawsuit alleging medical malpractice against Doctors' Center Hospital Bayamón, Inc. ("the Hospital"), Dr. Benito Hernández-Díaz ("Dr. Hernández"), his wife, and the conjugal partnership between them, among other defendants (collectively, "Defendants"). (Docket No. 1). On April 26, 2011, Plaintiff arrived at the Hospital and was admitted under the care of Dr. Hernández. Id. ¶ 20. At the time, Plaintiff's baby had a gestational age between 37-38 weeks. Id. That same day, Plaintiff gave birth to a male infant, ALG, by cesarean section. Id. ¶ 29. Due to complications, ALG was admitted to a special case nursery and was released on May 5, 2011. Id. ¶¶ 33-35. ALG was later diagnosed with autism and cerebral palsy. Id. ¶ 36. Plaintiff alleges ALG'S present and future conditions were caused by Defendants' negligence, that is, their departures from the medical standard of care. Id. ¶ 46. Specifically, these departures included "the failure to timely perform a cesarean section to prevent ALG's loss of oxygen at birth and to timely initiate resuscitative maneuvers." Id. ¶ 47. In addition, she asserts Defendants' failure to "manage and stabilize baby ALG's condition after his birth has been devastating. Baby ALG now is catastrophically injured with severe brain damage as well as physical and neurologic abnormalities that are permanent and

incapacitating." Id. ¶ 48. The Hospital and Dr. Hernández deny they failed to meet the standard of care. (Docket Nos. 9 ¶¶ 29 and 31; 12 ¶¶ 22 and 24).

Plaintiff retained Dr. Barry Schifrin ("Dr. Schifrin") as her expert witness and notified he would testify as:

> An expert in obstetrics and gynecology regarding his qualifications and experience, his review of the pertinent records, the standards of care applicable to this case, the Defendants' departures from such standards, the causal relationship of these departures with the damages of baby ALG, the contents of his expert report, the applicable medical literature and the testimony given at his deposition.

(Docket No. 22 at 44).

On February 18, 2020, the Hospital filed a *Motion in Limine* requesting the Court strike Dr. Schifrin as an expert. (Docket No. 44). Subsequently, on February 20, 2020, Dr. Hernández and his wife filed a *Motion for Joinder* requesting to join the Hospital's *Motion in Limine* and joinder was granted. (Docket Nos. 45 and 46). Plaintiff presented an *Opposition* to the *Motion in Limine*, and accordingly the Hospital filed a reply. (Docket Nos. 50 and 55).

On August 5, 2020, the Court granted the *Motion in Limine* and struck Dr. Schifrin's expert report for failing to comply with the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and the applicable case law. (Docket No. 56 at 16).

On December 16, 2020, the Hospital filed a *Motion for Summary Judgment.* (Docket Nos. 62). Dr. Hernández, Jane Doe and the conjugal partnership between them again moved for joinder and it was granted. (Docket Nos. 63 and 73). On January 29, 2021, Plaintiff opposed the MSJ and propounded additional facts ("*Opposition to MSJ*") (Docket Nos. 67 and 67-1). Lastly, on February 24, 2021, the Hospital replied to the opposition ("*Reply*"). (Docket No. 71).

## II. LEGAL STANDARD

### A. Summary Judgment Standard under Fed. R. Civ. P. 56

Summary judgment is proper under Fed. R. Civ. P. 56(a) "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" White v. Hewlett Packard Enterprise Company, 985 F.3d 61, 68 (1st Cir. 2021) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322).

A genuine dispute exists "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Alicea v. Wilkie, 2020 WL 1547064, at *2 (D.P.R. 2020) (quotation omitted). A fact is material if "it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment." Bautista Cayman Asset Co. v.

Terra II MC & P, Inc., 2020 WL 118592, at *6 (D.P.R. 2020)
(quotation omitted).

     The party moving for summary judgment "bears the initial
burden of showing that no genuine issue of material fact exists."
Feliciano-Muñoz v. Rebarber-Ocasio, 2020 WL 4592144, at *6 (1st
Cir. 2020) (citation omitted).  This burden is met "when the moving
party demonstrates that the opposing party has failed 'to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial.'" E.E.O.C. v. Kohl's Dept. Stores,
Inc., 774 F.3d 127, 131 (1st Cir. 2014) (quoting Celotex Corp.,
477 U.S. at 322).

     The non-movant may "defeat a summary judgment motion by
demonstrating, through submissions of evidentiary quality, that a
trialworthy issue persists." Robinson v. Town of Marshfield, 950
F.3d 21, 24 (1st Cir. 2020) (quotation omitted). Nevertheless, a
non-movant "cannot merely 'rely on an absence of competent evidence
but must affirmatively point to specific facts that demonstrate
the existence of an authentic dispute.'" Vogel v. Universal
Insurance Company, 2021 WL 1125015, at *2 (D.P.R. 2021) (quoting
Feliciano-Muñoz, 2020 WL 4592144, at *6). Solely relying on
"conclusory allegations, improbable inferences, and unsupported
speculation" is insufficient to defeat summary judgment. River

Farm Realty Tr. v. Farm Family Cas. Ins. Co., 943 F.3d 27, 41 (1st Cir. 2019) (quotation omitted).

    Local Rule 56 also governs summary judgment. *See* L. CV. R. 56. Per this Rule, a non-movant must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. The First Circuit has stated that adequately supported facts "shall be deemed admitted unless controverted in the manner prescribed by the local rule." Muñiz Negrón v. Worthington Cylinder Corporation, 2021 WL 1199014, at *3 (D.P.R. 2021) (quoting Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 520 (1st Cir. 2015)). Hence, "litigants ignore Local Rule 56 at their peril." Calderón Amézquita v. Vices, 2019 WL 3928703, at *1 (D.P.R. 2019) (citation omitted).

**B. Expert Testimony in Medical Malpractice Cases in Puerto Rico**

    The substantive law of Puerto Rico controls in a diversity case. *See* Baum-Holland v. Hilton El Con Management, LLC., 964 F.3d.77, 87 (1st Cir. 2020) ("Because this is a diversity case, we apply Puerto Rico's substantive law."); Summers v. Fin. Freedom Acquisition LLC, 807 F.3d 351, 354 (1st Cir. 2015) ("Since this is a diversity case, we look to federal law for guidance on procedural matters (such as the summary judgment framework) and to state law (here, [Puerto Rico] law) for the substantive rules of decision."). Thus, pursuant to Puerto Rico law, a plaintiff in a medical

malpractice case must prove three key elements: "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Santa Cruz Bacardi v. Metro Pavia Hospital Inc., 2020 WL 249433, at *6 (D.P.R. 2020) (quotation omitted). This duty owed, which is the standard of care owed by physicians to their patients, is based on a national standard. *See* Noel Martínez et al. v. United States of America, 2020 WL 5039242, at *4 (D.P.R. 2020) (citation omitted). Thus, "in the light of the modern means of communication and education," this duty must "meet[] the requirements generally recognized by the medical profession." Id. (quotation omitted).

Under Puerto Rico law there is a presumption that "physicians have 'provided an appropriate level of care.'" Laboy-Irizarry v. Hospital Comunitario Buen Samaritano, Inc., 2019 WL 3311270, at *9 (D.P.R. 2019) (quoting Borges ex rel. S.M.B.W. v. Serrano-Insern, 605 F.3d 1, 7 (1st Cir. 2010)). "Plaintiffs are obligated to refute this presumption by proffering evidence which shows the minimum required standard of care and the doctor's failure to achieve said standard." López Ramírez v. Grupo HIMA San Pablo, Inc., 2020 WL 5351851, *2 (D.P.R. 2020) (citation omitted). Therefore, absent proof of the duty owed "**it is virtually impossible to prove either breach or proximate cause**." Vargas-Alicea v. Cont'l Cas. Co., 2020

WL 3470325, at *3 (D.P.R. 2020) (quotation and internal quotation marks omitted) (emphasis added).

To prove the "causal nexus" described in the third element of a medical malpractice claim, a plaintiff must establish "adequate causation." This adequate cause "is not every condition without which a result would not have been produced, **but that which ordinarily produces it according to general experience**." Laboy-Irizarry, 2019 WL 3311270, at *9 (quotation omitted) (emphasis added). Likewise, "[u]nder Puerto Rico law, '[i]n order to determine the applicable standard of care in a medical malpractice action and to make a judgment on causation, a trier of fact will generally need the assistance of expert testimony.'" Laureano-Quiñones v. Nadal-Carrión, 982 F.3d 846, 848 (1st Cir. 2020) (quoting Pagés-Ramírez v. Ramírez-Gonzalez, 605 F.3d 109,113 (1st Cir. 2010)).

The First Circuit has repeatedly held that expert testimony is **required** to prove causation in medical malpractice suits because it is a field where issues are "scientifically driven and more nuanced than in most tort cases." Martínez-Serrano v. Quality Health Servs. Of Puerto Rico, Inc., 568 F.3d 278, 286 (1st Cir. 2009); see also Cruz-Vázquez v. Menonita General Hosp., Inc., 613 F.3d 54, 56 (1st Cir. 2010); Pages-Ramírez, 605 F.3d at 113; Marcano Rivera v. Turabo Medical Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005) (quotation omitted) ("[A] factfinder normally

cannot find causation [a breach of the duty owed] without the assistance of expert testimony to clarify complex medical and scientific issues that are more prevalent in medical malpractice cases than in standard negligence cases."). Thus, the District of Puerto Rico, time and time again, has dismissed medical malpractice cases where the plaintiff's sole expert report has been stricken from the record. *See e.g.*, <u>Lopez Ramírez,</u> 2020 WL 5351851 at *8; <u>Noel Martinez</u>, 2020 WL 5039242, at *6; <u>Santa Cruz Bacardi</u>, 2020 WL 249433, at *9; <u>Laureano-Quiñones v. Nadal-Carrión</u>, 2018 WL 4057264, at *3 (D.P.R. 2018), <u>aff'd</u>, <u>Laureano-Quiñones</u>, 982 F.3d at 850; <u>Gonzalez Rivera v. Hosp. HIMA-Caguas</u>, 2018 WL 4676925, at *5 (D.P.R. 2018), <u>aff'd sub nom.</u> <u>Gonzalez-Rivera v. Centro Médico Del Turabo, Inc.,</u> 931 F.3d 23 (1st Cir. 2019); <u>Rodríguez-Sánchez v. United States</u>, 380 F. Supp. 3d 184, 189 (D.P.R. 2016); <u>Rodríguez-Diaz v. Seguros Triple-S, Inc.,</u> 2009 WL 3066637, at *3 (D.P.R. 2009), <u>aff'd</u>, 636 F.3d 20 (1st Cir. 2011).

### III. FINDINGS OF FACT

Before discussing the undisputed facts, the Court notes that most of the material facts in *Plaintiff's Statements of Uncontested Material Facts* are based on Dr. Schifrin's expert report. (Docket No. 67-1 5-6). **But the report was already stricken from the record by this Court.** (Docket No. 56). Furthermore, Plaintiff did not seek reconsideration of this decision until she filed her *Opposition to MSJ*.

The First Circuit has held that "[i]n opposing a motion for summary judgment, a plaintiff must proffer **admissible evidence** that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition." Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662 n.3 (1st Cir. 2010) (quotation omitted) (emphasis added). A stricken expert report is **not** admissible evidence. *See e.g.*, Lopez Ramírez, 2020 WL 5351851, at *3 (explaining that facts based on an "inadmissible expert report are not adequately supported by the record and cannot be considered on summary judgment."); Bailey v. United States, 115 F. Supp. 3d 882, 893 (N.D. Ohio 2015) (finding doctor's expert report inadmissible and thus plaintiff had failed to proffer admissible evidence to prove causation in a wrongful death claim); Denton v. Ne. Ill. Reg'l Commuter R.R. Corp., 2005 WL 1459203, at *5 (N.D. Ill. 2005) (except for stricken expert's report as to medical causation, plaintiff had not offered any expert testimony to support an inference of causation, and failed to produce admissible evidence of an essential element of her claim); Crawford v. Newport News Indus. Corp., 2018 WL 4561671, at *82 (E.D. Va. 2018), report and recommendation adopted in part, 2018 WL 2943445 (E.D. Va. 2018), appeal dismissed sub nom. Kershaw v. Newport News Indus. Corp., 2018 WL 8058614 (4th Cir. 2018) (holding in a disparate treatment claim that plaintiff may not rely on a doctor's analysis "for any point" since his testimony and opinions were stricken by

the Court). Therefore, proffered facts based on Dr. Schifrin's **inadmissible** expert report are not adequately supported by the record and cannot be considered on summary judgment.

After analyzing the SUMF (Docket No. 62-1), Plaintiff's additional facts (Docket No. 67-1), the Hospital's *Reply* to said facts (Docket No. 71), and **only crediting material facts** that are **properly supported by a record citation and uncontroverted**, the Court makes the following findings of facts:[2]

1. On January 30, 2017, Plaintiff filed a civil complaint on behalf of her minor son ALG against the Hospital, Dr. Hernández, his wife, and the conjugal partnership between them. (Docket No. 62-1 ¶ 1).

2. The Complaint alleges that as a result of negligence during the delivery, ALG sustained irreversible injuries and has been diagnosed with cerebral palsy, among other conditions. Id. ¶ 2.

3. Plaintiff alleges ALG's conditions were caused by the Defendants' negligence, all of whom departed from the medical standards of care and otherwise failed to act in a prudent, reasonable or responsible manner. Id. ¶ 3.

4. The Complaint avers that "[D]efendants' departures from the medical standards of care and/or their professional

---

[2] References to a Finding of Fact shall be cited as follows: (Fact ¶ _).

negligence include, but are not limited to, the failure to timely perform a caesarean section to prevent ALG's loss of oxygen at birth and to timely initiate resuscitative maneuvers." Id. ¶ 4.

5.  The Complaint further alleges that Defendants' failure to manage and stabilize ALG's condition after birth have left him "catastrophically injured with severe brain damage as well as physical and neurologic abnormalities that are permanent and incapacitating." Id. ¶ 5.

6.  Plaintiff posits the Hospital failed to comply with the applicable standards of the medical profession, and that it "is vicariously liable for the negligent acts and/or omissions incurred by its medical and nursing staff that intervened with Mrs. González and/or baby ALG." Id. ¶ 6.

7.  For purposes of establishing negligence and causation, Plaintiff announced Dr. Schifrin as her expert witness and stated he would:

> [T]estify as an expert in obstetrics and gynecology regarding his qualifications and experience, his review of the pertinent records, the standards of care applicable to this case, the Defendants' departures from such standards, the causal relationship of these departures with the damages of baby ALG, the contents of his expert report, the applicable medical literature and the testimony given at his deposition.

Id. ¶ 7.

8. On August 5, 2020, the Court entered an Opinion and Order granting the Hospital's *Motion in Limine* and struck the proffered testimony of Plaintiff's only expert, Dr. Barry Schifrin. Id. ¶ 8.

9. In its Opinion, the Court found that "after reviewing Dr. Schifrin's proffered report it is evident that the same is improperly founded and inadmissible." Id. ¶ 9.

10. The Court also held that "[n]ot only does the proffered expert testimony lack key medical data, it fails to cite any medical literature." Id. ¶ 10.

11. The Court also found that the expert report "does not specify if the [standard of care] is the *national* standard of care, as required by the applicable case law, or solely his personal opinion on the matter." (Docket No. 56 at 15).

12. The Court concluded that "Dr. Schifrin's report and proffered testimony do not fulfill the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702 and the applicable case law." (Docket No. 62-1 ¶ 12).

13. Plaintiff did not file a separate motion for reconsideration of the Court's Opinion and Order at Docket No. 56 within the timeframe provided by Federal Rules of Civil Procedure 59(e). See Docket Civ. No. 17-1136 (RAM).

## IV. ANALYSIS

### A. Plaintiff Cannot Request Reconsideration Via Its *Opposition to the Motion for Summary Judgment*

Plaintiff utilized her *Opposition to MSJ* to request a reconsideration of the Court's decision to exclude Dr. Schifrin's testimony at Docket No. 56. (Docket No. 67 at 1-9). The Hospital highlighted this in its *Reply*. (Docket No. 71 at 1). Although Plaintiff tried to assert arguments encouraging a reconsideration of the Opinion and Order issued by this Court, this **is not the proper way to request reconsideration**. Moreover, the request is untimely as the *Opposition to MSJ* was filed over **five (5) months** after the Opinion and Order at Docket No. 56.

Notably, "[t]he Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration." United States v. Puerto Rico Industrial Development Company, 386 F.Supp.3d 210, 213 (D.P.R. 2019) (quotation omitted). However, any motion seeking reconsideration of a judgment or order issued by a court "is considered as a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e)." Villanueva-Mendez v. Nieves Vazquez, 360 F.Supp.2d 320, 323 (D.P.R. 2005). Therefore, a motion for reconsideration, as any other motion under Rule 59(e), "must be filed no later than 28 days after the entry of the judgment." Oquendo v. Costco Wholehouse Corporation, 2020 WL 2457545, at *1 (D.P.R. 2020). Hence, the

reconsideration requested via the *Opposition to MSJ* is untimely and is insufficient to avoid summary judgment. Dr. Schifrin's report remains inadmissible evidence.

## B. Plaintiff Cannot Prove the Hospital's Negligent Conduct Without Expert Testimony

The Hospital's *Motion for Summary Judgment*, which Dr. Hernández, his wife and the conjugal partnership between them have since joined, is based on Puerto Rico case law which states that expert testimony is needed to prove the standard of care, medical negligence, and causation in medical malpractice suits. (Docket No. 62 at 8). The Hospital contends Plaintiff cannot prevail at trial without expert testimony. Id. at 9. The Court agrees.

The Court previously struck Plaintiff's expert report. (Docket No. 56). The Court found that Dr. Schifrin's expert report was inadmissible because it: 1) concluded that there were failures in the standard of care without grounding his conclusion "on sufficient facts or data nor the product of reliable principles as required by Fed. R. Evid. 702"; 2) "lack[ed] key medical data, [as] it fails cite any medical literature whatsoever"; 3) failed to specify if the standard of care allegedly breached by Defendants "is the national standard, as required by the applicable case law, or solely his personal opinion on the matter", and 4) did "not provide any data to sustain or explain the conclusory finding that

there was a deviation from the standard of care." (Docket No. 56 at 14-15, Facts ¶¶ 9-11).

Without expert testimony, Plaintiff **cannot** establish Defendants' breach of a duty of care. Without establishing this breach, Plaintiff cannot establish sufficient causation to link Dr. Hernández and the Hospital's alleged negligent behavior with ALG's current condition. Thus, expert testimony is needed to prove if Defendants' acts caused the "severe brain damage as well as physical and neurologic abnormalities that are permanent and incapacitating" that ALG allegedly exhibits. (Fact ¶ 5).

Further, Plaintiff failed to proffer in her *Opposition to MSJ* sufficient material facts to show that the Hospital's medical interventions contributed to ALG's current state. (Docket No. 67-1). Plaintiff also argued that by "reserv[ing] and announc[ing] their right to use as their own expert any expert witness announced by defendants" in the Joint Proposed Pretrial Conference, they can use Defendants' sole expert witness, Dr. Gaudier, to establish Defendants' breach of duty of care. (Docket No. 67 at 15-17). Plaintiff also invoked case law asserting that once an expert report is filed in a case, said expert belongs to either side. <u>Id.</u> at 17). She therefore alleges summary judgment is not proper because she "can, and will, prove [her] case by preponderance of the evidence through Dr. Gaudier's testimony if necessary." <u>Id.</u> Conversely, the Hospital's *Reply* posits that said argument is

insufficient to overcome summary judgment because Plaintiff did
not submit Dr. Gaudier's expert report, nor did she provide a
deposition of said expert that could illustrate that his testimony
would be favorable or enough to prove Plaintiff's case. (Docket
No. 71 at 8-10).

The Court agrees with Plaintiff that once designated, an
expert is available to either side. *See* Fed. R. Civ. P. 26(b)(4)(A);
*see also* S.E.C. v. Koenig, 557 F.3d 736, 744 (7th Cir. 2009)
(citing Fed. R. Civ. P. 26(b)(4)(B)) ("A witness identified as a
testimonial expert is available to either side; such a person can't
be transformed after the report has been disclosed, and a
deposition conducted, to the status of a trial-preparation expert
whose identity and views may be concealed.") **However, Plaintiff
has not submitted Dr. Gaudier's report to the Court, nor did she
make specific citations or references to said report or any
subsequent expert deposition in her *Opposition to MSJ*.** (Docket No.
67). It is a basic tenet of summary judgment jurisprudence that
"the nonmovant must point to competent evidence and specific facts
to defeat summary judgment." Bautista Cayman Asset Co. v.
Asociacion de Miembros de la Policia de Puerto Rico, 2020 WL
582941, at *1 (D.P.R. 2020) (citing Tropigas de P.R., Inc. v.
Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st
Cir. 2011)). Therefore, Plaintiff cannot rely on Dr. Gaudier's
expert report to overcome summary judgment.

Plaintiff is left without expert evidence to prove her medical malpractice case. Moreover, her insistence that she will call Dr. Gaudier as an expert witness shows that expert testimony is **required** to assist the finder of fact in determining if Defendants' alleged negligence caused ALG to suffer, including but not limited to, severe brain damage as physical and neurologic abnormalities that are permanent and incapacitating. (Fact ¶ 5). Plaintiff cannot rely on what she hopes Dr. Gaudier *might* testify at trial to defeat summary judgment instead of presenting said testimony in an admissible evidentiary form. Plaintiff is thus missing all three elements required to prevail in a medical malpractice case as without expert testimony she cannot show: (1) the duty that the Hospital and Dr. Hernández owed to ALG; (2) an act or omission on their behalf breaching said duty; and (3) a sufficient causal nexus between the breach and ALG's current state. *See* <u>Santa Cruz Bacardi</u>, 2020 WL 249433, at *6.

## V. CONCLUSION

Plaintiff lacks admissible expert testimony to show that Defendants' conduct caused ALG's severe damages and conditions. The Court **GRANTS** the *Motion for Summary Judgment* at Docket No. 62. Judgment dismissing the action **with prejudice** shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of July 2021.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
